IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | |
|---|---|
| DEBRA J. ROACH, ) | C/A 2:07-0136-MBS-BM |
| ) | C/A 2:07-1574-MBS-BM |
| Plaintiff, ) | |
| ) | |
| v.  ) | **REPORT AND RECOMMENDATION** |
| ) | |
| DR. ROBERT GATES, ) | |
| SECRETARY OF DEFENSE, ) | |
| ) | |
| Defendant. ) | |

Plaintiff filed Civil Action Number 07-136, pro se, asserting claims of employment discrimination. Plaintiff subsequently filed a second case, Civil Action Number 07-1574, setting forth the same claims against the same Defendant. By Order filed September 25, 2007, these cases were consolidated.[1]

Plaintiff was formerly employed as a civilian pay technician with the Defense Finance and Accounting Service (DFAS), an agency of the United States Department of Defense. Plaintiff was

---

[1] Plaintiff, a federal employee, filed her first case (07-136) alleging employment discrimination after receiving a final order from the United States Merit Systems Protection Board (MSPB). That order notified Plaintiff of her right to review by either the Equal Employment Opportunity Commission (EEOC) or through judicial action in United States District Court. See Answers to Local Civil Interrogatories, pp. 1-2. Through her initial filing (07-136), Plaintiff was apparently exercising her right to judicial action. However, Plaintiff's second filing (07-1574) appears to be a result of Plaintiff having also exercised her right to administrative review by filing an appeal with the EEOC, as Plaintiff's second complaint seems to challenge the EEOC determination. See Complaint Attachment (Civil Action 9:07-cv-1574-MBS-BM).



1

discharged from her position on February 19, 2006. Plaintiff's two complaints, both filed pro se, offer little in the way of factual allegations for purposes of establishing exactly what Plaintiff's claims are. Her initial complaint, in Civil Action Number 07-136, alleges in toto:

> My statement of claim, is I was wrongfully terminated, for participating in protected activity and was denied full due process, and reasonable accommodations for my disability.

Plaintiff seeks reinstatement to her position with "full retirement entitlement . . . and benefits that is due to me . . . ."

In her second complaint, Civil Action Number 07-1574, Plaintiff alleges in toto:

> They failed to address my reasonable accommodations, under handicap discrimination. They incorrectly framed my claims all harassment issues were not addressed under the continuing harassment doctrine, the [ALJ] arbitrarily, picked certain claims to adjudicate but did not address all my claims. They did not consider evidence. I provide before the record closed that could have resulted in a favorable decision for me.

In this complaint, Plaintiff seeks "[t]o be made whole, compensatory damages and attorney's fees."

In responses to court ordered interrogatories, Plaintiff states that she was terminated from her position as a civilian pay technician on February 16, 2006 for failing to comply with a direct order, failure to follow instructions, and providing false information. Plaintiff states that she appealed her removal to the Merits Systems Protection Board, but that her appeal was denied. Plaintiff also references prior EEOC cases she had filed with the Secretary of the Defense, one in February 2002 and the other in May 2004, both of which she contends were settled, and also references a "Notice of Occupational Disease and Claim for Compensation" she filed with the United States Department of Labor in November 2005, which was dismissed by an Administrative Law Judge. See Response to Court Ordered Interrogatories filed August 15, 2007 in Civil Action No. 07-136. Plaintiff further



2

alleges that she was discriminated against on the basis of her race (African American), that she was retaliated against, and that she was subjected to a hostile work environment based on various actions going back to September 2004, and continuing through December 2005. See Answers to Court Ordered Interrogatories filed August 24, 2007 in Civil Action No. 07-1574, at pp. 2-7.

   The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on August 4, 2008. After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition to the Defendant's motion on September 19, 2008. On February 6, 2009, a Report and Recommendation was entered recommending that the Defendant be granted summary judgment on all of Plaintiff's discrimination claims as well as any union activity claims except for certain union activity claims being asserted by Plaintiff under her Collective Bargaining Agreement (CBA).[2] That Report and Recommendation was adopted by Order of the Court filed March 6, 2009, and summary judgment was granted on all of Plaintiff's claims except as to certain non-Weingarten union activity claims.[3] The matter was then re-referred to the undersigned for consideration of those remaining claims.

   An Order was thereafter issued establishing a briefing schedule for the parties with respect to these remaining claims, and on March 25, 2009, the Defendant filed a motion to dismiss

---

[2] In addition to discrimination claims, Plaintiff claims that the Defendant's actions were also in reprisal/retaliation for union related activities.

[3] As part of her union allegations, Plaintiff argued that the Defendant's conduct was in violation of her rights under NLRB v. J. Weingarten, Inc., 420 U.S. 251 (1975), which held that an employee has a right to union representation at any investigatory interview threatening disciplinary action, and that an employer commits an unfair labor practice by denying an employee's request for such representation. Weingarten, 420 U.S. at 253. The Report and Recommendation of February 6, 2009 recommended dismissal of Plaintiff's Weingarten claim. Plaintiff did not file any objections, and the Defendant was granted summary judgment on that claim in the Court's Order of March 6, 2009.

3



and/or summary judgment with respect to Plaintiff's remaining union activity claim(s). After receiving an extension of time to respond, Plaintiff filed a memorandum in opposition on April 28, 2009, together with additional attachments on April 29, 2009. On February 8, 2010, a Report and Recommendation was entered recommending that the Defendant be granted summary judgment on Plaintiff's remaining union activity claims, and that this case be dismissed. That Report and Recommendation was adopted by Order of the Court filed March 23, 2010.

Plaintiff appealed the dismissal of her case, and in an Order filed January 14, 2011 the Fourth Circuit Court of Appeals affirmed in part, and vacated and remanded in part. In that Order the Fourth Circuit upheld the dismissal of Plaintiff's claims except for that portion of the Court's Order of March 23, 2010 dismissing Plaintiff's claim that she was improperly terminated in retaliation for her participation in union activities and in violation of the CBA, with remand for consideration and ruling on that claim.[4] The matter has now been recommitted to the undersigned for review of this issue.

**I.**

With respect to Plaintiff's claim that she was wrongfully terminated for participating in union activities and in violation of the CBA, federal labor law generally requires employees to exhaust any

---

[4]The undersigned addressed three (3) union activity claims: that Plaintiff was not allowed to come to the Defendant's facility to conduct union business during her suspension period, that she was not allowed to submit statements and witnesses on her behalf concerning the allegations brought against her as required by the Collective Bargaining Agreement, and that she was not allowed union representation during grievance procedures and/or meetings with supervisors concerning her work performance. See Report and Recommendation filed February 6, 2009, at p. 17. The last of these three claims was dismissed by the Court in the Order filed March 6, 2009, while the remaining two claims were dismissed by the Court in its Order filed March 23, 2010. However, in its January 14, 2011decision, the Fourth Circuit held that Plaintiff had also claimed that she was terminated in retaliation for her protected union activities and in violation of the CBA, and remanded for consideration of that claim.



4

grievance procedure provided in the union's collective bargaining agreement before asserting a contract grievance against their employer in federal court, and where a discharged employee resorts to the courts before these grievance procedures have been fully exhausted, the defendant employer may defend on the ground that the exclusive remedies provided by the collective bargaining agreement have not been exhausted. See Vaca v. Sipes, 386 U.S. 171, 184 (1967)[where employee's claim is based upon breach of the collective bargaining agreement, they are "bound by terms of the agreement which govern the manner in which contractual rights may be enforced.  For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established in the bargaining agreement"]; Seborowski v. Pittsburgh Press Co., 188 F.3d 163, 168 (3rd Cir. 1999).  Further, where a collective bargaining agreement's procedures are followed, the results reached are generally final and binding unless the employee can show that the union breached its duty of fair representation in processing the grievance. Weber v. Potter, 338 F.Supp. 2d 600, 606 (E.D.Pa. 2004); Griesmann v. Chemical Leaman Tank Lines, Inc., 776 F.2d 66, 72-73 (3rd Cir. 1985); DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151, 163 (1983).

The Defendant argued in its initial motion to dismiss and/or for summary judgment that Plaintiff had produced no evidence that she had exhausted the administrative remedies available under the CBA, and that any claims relating to wrongful termination and retaliation for pursuing her rights under the CBA are therefore barred. See Defendants' Brief filed August 4, 2008, at pp. 12-13; see also Vaca, 386 U.S. at 184 ["[I]f the wrongfully discharged employee himself resorts to the Courts before the grievance procedures have been fully exhausted, the employer may well defend on the ground that the exclusive remedies provided by such a contract have not been exhausted"].  Here, the CBA has a grievance procedure which provides that any employee may file a grievance for any alleged



5

breach of the CBA or for "any claimed violation, misinterpretation, or misapplication of any law, rule, or regulation affecting conditions of employment." See Defendant's Exhibit [Court Docket No. 71-4], at p. 36 [p. 90 of document]. The CBA further provides that the "procedure contained herein shall be the sole procedure available for resolution of grievances of employees in the unit and the Parties hereto, except as provided in Section 4 of this Article." Id.[5] Section 4, which is titled "Appeal or Grievance Option", provides as follows:

> An employee alleging discrimination or affected by a removal or reduction in grade based on unacceptable performance, or an adverse action, may at his or her option raise the matter under the appropriate statutory appellate procedure or under the provisions of this Article, but not both. For the purposes of this Section and pursuant to Section 7121(d) and (e) (1) of 5 U.S.C., an employee shall be deemed to have exercised his or her option under this Section at such time as the employee timely files a notice of appeal under the applicable appellate procedures or timely files a grievance in writing in accordance with the provisions of this Article, whichever occurs first.

Id., at p. 38 [p. 92 of CBA].

The Defendant has submitted evidence that Plaintiff never filed a grievance under the CBA; see Defendants's Exhibit 1, at ¶ 5 (Court Docket No. 71-2, at p. 2); and Plaintiff produced no evidence to show that she exhausted the administrative remedies available to her under the CBA.[6] Therefore, if Plaintiff was required to exhaust her remedies under the CBA prior to filing a federal lawsuit concerning her claim that she was terminated in retaliation for engaging in protected union

---

[5] Defendant contends that the reference to Section 4 is a typographical error, and that the CBA actually meant to refer to Section 3, which excludes certain matters from the requirements of the grievance procedure. Id., at p. 37 [p. 91 of the CBA]. Plaintiff has not asserted that any of these exclusions apply to her case.

[6] In Plaintiff's Exhibit G [Affidavit of William Roach], the affiant attests that Plaintiff did *attempt* to pursue remedies under the CBA; specifically, a grievance and attempt at arbitration, but was "coerced to file an appeal with MSPB" under § 4 because this attempt was unsuccessful. See Court Docket No. 80, p. 6 [p. 5 of Document].



6

activities and in violation of the CBA, this lawsuit is subject to dismissal for failure to exhaust. Vaca, 386 U.S. at 184.

## II.

Plaintiff argues in her response to the Defendant's initial motion to dismiss and/or for summary judgment that pursuant to Section 4 of the CBA she filed an appeal to the Merit Systems Protection Board (the mixed case), and that pursuant to Title 5 C.F.R. § 1201.1, et seq., the filing of an MSPB appeal results in a waiver of an employee's right to file either an EEOC complaint or a union grievance, and that as such she exhausted her administrative remedies when she received her decision from the MSPB, thereby creating a right of de novo appeal to this District Court. See Plaintiff's Response Memorandum (Court Docket No. 61-1, at p. 16). However, Plaintiff's argument that she was not required to exhaust her remedies under the CBA because she instead chose to proceed before the MSPB fails to save her claim from dismissal. Assuming, without deciding, that Plaintiff could have properly pursued this claim outside of the CBA grievance requirements under § 4 of the CBA; see Defendant's Exhibit [Court Docket No. 71-4], at p. 38 [Page 92 of CBA]; Plaintiff has simply failed to present evidence sufficient to create a genuine issue of fact as to the merits of her remaining union activity retaliation claim.

Plaintiff is proceeding with her union retaliation claim in this Court pursuant to 5 U.S.C. § § 7703(b)(2) and (c), as a "mixed case" originally containing both discrimination and non-discrimination claims. However, only Plaintiff's discrimination claims were subject to de novo review in this Court.[7] Plaintiff's claim that her removal was in retaliation for her union activities is reviewed on the record. Johnson v. Burnley, 887 F.2d 471, 474, n. 1 (4th Cir. 1989); Kelliher v. Veneman, 313

---

[7]As previously noted, supra, Plaintiff's discrimination claims have already been dismissed.



F.3d 1270, 1275 (11th Cir. 2002). Therefore, in reviewing this claim, this Court is limited to review of the administrative record and must affirm the MSPB decision unless it was "1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; 2) obtained without procedures required by law, rule or regulation having been followed; or 3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); see Makky v. Chertoff, 489 F.Supp.2d 421, 428-429 (D.N.J. 2007).

The MSPB decision has been submitted by Plaintiff as her exhibits C and E to Court Docket No. 79. For purposes of this Court's consideration of Plaintiff's remaining claim, the only issues considered by the MSPB were Plaintiff's removal based on 1) failing to comply with a direct order on October 21, 2005, 2) failing to follow instructions on October 18, 2005, and 3) providing false information on October 18, 2005.[8] See Plaintiff's Exhibit C. The record Plaintiff has provided to the Court does not reflect that the MSPB considered a claim that Plaintiff's removal was in retaliation for Plaintiff having engaged in union activity,[9] or that Plaintiff ever presented any such claim. See Plaintiff's Exhibits A-F.[10] Because the record submitted to this Court reflects that Plaintiff failed to raise her union retaliation claim in the context of her MSPB appeal, this Court has no jurisdiction to consider it now. Cf. Lizut v. Dep't. Of the Army, 717 F.2d 1391, 1396 (Fed. Cir.

---

[8]The MSPB also addressed Plaintiff's claim of disability discrimination.

[9]While the decision does reflect that Plaintiff asserted her union rights (specifically, her Weingarten rights)during her meeting with Bray on October 18, 2005; see Plaintiff's Exhibit C, at pp. 5-6; there is no indication in the decision or in the other administrative filings with this Court that a claim that Plaintiff's removal was in retaliation for her attempting to exercise these rights was considered by the administrative agency.

[10]The analysis required for consideration of such a claim is set forth in Makky, 489 F.Supp.2d at 439 ["[P]laintiff must show: 1) [s]he engaged in protected activity; 2) defendant knew of such activity; 3) under the circumstances, the adverse action could have been retaliatory; and 4) a genuine nexus exists between the retaliation and the adverse action"]. No such analysis or discussion is contained in the MSPB decision.



1983)["Allowing a party to withhold important issues from the board and later present them to court would undermine the board's authority."]; Eneje v. Gonzales, No. 04-1695, 2007 WL 1068176 at * 4 (D.S.C. Mar. 30, 2007); Varner v. Reich, No. 90-1027E (F), 1995 WL 264670, at * 6 (W.D.N.Y. April 28, 1995), citing to Hays v Postmaster General of the United States, 868 F.2d 328, 330 (9th Cir. 1989)(per curiam). Therefore, Plaintiff's union activity retaliation claim must be dismissed.

### III.

Even assuming for purposes of argument that a union retaliation claim *was* presented and exhausted at the administrative level, the evidence reflects that Plaintiff's termination was a result of Plaintiff failing to perform work she was required to perform, failure to follow instructions, as well as engaging in activity deemed disruptive or improper; see Plaintiff's Exhibit B-2 [Court Docket No. 61-3]; see also Bray Deposition, pp. 27-42, Exhibits 11, 13; and Plaintiff has failed to show that the MSPB decision affirming her termination was arbitrary or otherwise not supported by substantial evidence.[11]  Makky, 489 F.Supp. 2d at 439.

Plaintiff alleges that she engaged in protected union activity when she requested union representation concerning a letter of warning she received on or about July 29, 2004 (Plaintiff alleged she had such a right under Article 3, Section 4 of the CBA), and that, as the secretary of the union, she had been very active in terms of her union activities which caused conflicts with her employer. Id., at attached Exhibit D [Plaintiff's Answers to Defendant's Reissued Interrogatories, # 5]; see also, Plaintiff's Memorandum in Opposition [Court Docket No 61-1], at pp. 8-9, 11-12. Plaintiff contends

---

[11]Substantial evidence has been defined as evidence which a reasoning mind would accept as sufficient to support a particular conclusion. McEntee v. Merit System Protection Board, 404 F.3d 1320, 1325 (Fed. Cir. 2005); cf. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990)["If there is evidence to justify refusal to direct a verdict or the case before a jury, then there is 'substantial evidence'], citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966) [social security cases].

9



that it was her union activity that led to her dismissal, not any problems with her work performance. However, the record reflects that Bray recommended Plaintiff's removal from federal service for the following reasons: failure to follow a direct order, failure to follow instructions, and providing false information; see Plaintiff's Memorandum in Opposition to Summary Judgment [Court Docket No. 61-1], attached Exhibit A; and the MSPB found at the conclusion of its proceedings that Plaintiff was given a deadline for completing a debt inventory and that Plaintiff had manifestly failed to comply with that direct order, that Plaintiff repeatedly refused to comply with instructions to hang up the telephone during an office meeting with Bray and Lilia Rivera (lead payroll technician), and that Plaintiff provided false information to Bray in response to a request for work records. See Plaintiff's Response in Opposition (additional attachments) [Court Docket No. 79], at Exhibit C [Initial Decision of MSPB].

There is no evidence in the administrative record provided to this Court[12] that shows arbitrariness with respect to these findings. Indeed, Plaintiff does not even address these grounds for her removal in her response memorandum of September 19, 2008 [Court Docket No. 61-1], other than to discuss the "temporal proximity" of her engaging in union activity and her dismissal and to argue

---

[12] The entire administrative record does not appear to have been submitted to the Court. Cf. 5 C.F.R. § 1201 [detailing procedures by which a party may obtain a tape or transcript of his hearing]; see also Johnson v. Dep't. of the Air Force, No. 05-3121, 157 Fed.Appx. 303 (Fed. Cir. 2005). Additionally, the record that has been provided includes not just portions of the MSPB administrative record, but also numerous exhibits and affidavits post-dating the administrative decision as well as in support of, and opposition to, summary judgment on Plaintiff's other claims. However, pursuant to 5 U.S.C. § 7703(c), the undersigned has only considered the documents provided that relate to the DFAS decision and appeal to the MSBP in reaching a decision on Plaintiff's union activity retaliation claim. Johnson, 887 F.2d at 474, n. 1.



that she was denied union representation (a Weingarten rights claim).[13]  In her memorandum in opposition to the Defendant's second motion for summary judgment, Plaintiff cited to her attached Exhibits F and G as supporting her claim that her removal was improper.  See Court Docket No. 79, at pp. 41-52; Court Docket No. 80, pp. 1-56.[14]  Much of this documentation relates to Plaintiff's EEO claims, which have previously been dismissed.

Plaintiff's Exhibit F is a copy of a "Supplementation of the Record with Additional Evidence and Arguments" that was submitted to the MSPB (prior to the initial and final decisions of that Board).  Plaintiff argues in this document, which is in the form of a brief, that she was entitled to make a phone call during the meeting of October 18, 2005 (the meeting which resulted in Plaintiff's second and third grounds for termination) because she was entitled to seek representation under the CBA,[15] and that in any event there was no prohibition on possession or use of cell phones in the workplace.  However, Plaintiff does not dispute that she failed to comply with her supervisor's directive to stop using her cell phone during this meeting.  With respect to the false information charge, Plaintiff argues in this brief [Exhibit F] that she "honestly believed that the folders [that she provided to her supervisor] were completed . . . [and that] she presented what she believed to be true

---

[13] As previously noted, Plaintiff's claim that the Defendant's conduct was also in violation of her rights under NLRB v. J. Weingarten, Inc., 420 U.S. 251 (1975), has previously been dismissed. See Report and Recommendation filed February 6, 2009, at pp. 17-18; Order of the Court filed March 6, 2009.

[14] While Plaintiff references these exhibits in her memorandum in opposition to Defendant's motion for summary judgment, Plaintiff fails to actually cite to where in these sixty-seven pages of materials support for her arguments can be found.  See Plaintiff's Memorandum [Court Docket No. 78, p. 6].  Nonetheless, the undersigned has culled through these documents in an attempt to find evidence to support Plaintiff's claims.

[15] A Weingarten claim.



11

in accordance with what she was trained to do as part of the team." Court Docket No. 79, at p. 45. Again, however, Plaintiff offers no evidence to refute the MSPB's finding that the material provided to her supervisor was not in fact incorrect, or that the MSPB decision was arbitrary or otherwise improper. Makky, 489 F.Supp. 2d at 428-429.

Plaintiff's Exhibit G is an affidavit from her husband, William Roach, who was also a member of the union at the DFAS. William Roach states in this affidavit the Defendant engaged in unfair labor practices under 5 U.S.C. § 7116(a)(1) and (8) [preventing or interfering with an employee's exercise of rights under the Labor - Management Relations Act] by committing procedural errors during the investigation of the Plaintiff, not allowing Plaintiff union contact and representation, and not giving her full access to adequate training. Id, at p. 10 [p. 9 of document]. William Roach also spends considerable time discussing the alleged procedural errors in the process used to effect Plaintiff's termination, in particular Plaintiff's inability to successfully pursue arbitration. William Roach attests that:

> Plaintiff was heavily involved in Union activities to include participation in arbitration hearings, representation of employees, Union training and as the Local 2510 Secretary she sit [s] in as a member of the Local Union Contract Negotiations Team with Senior Management. The Defendant on many occasions made evident their pretext to retaliate against the Plaintiff, because, of her effectiveness and her willingness to stand up for employee union rights and her Union President and other Local Union Officials who [were] constantly attacked by the Defendant while enforcing the CBA.

Id., at p. 17 [p. 16 of document]. William Roach further states in this affidavit that the Defendant failed to provide Plaintiff with disability compensation or accommodate her medical problems by reducing her work load and placing her on light duty. See generally, William Roach Affidavit. However, this affidavit was prepared as an exhibit for this lawsuit, and is not therefore part of the administrative record for review, although



some of the attachments to this exhibit are apparently from the administrative record.

One such attachment is a letter dated December 30, 2005 from the Plaintiff to the Director of Payroll, which is a response to the Defendant's proposal to remove her from service. Plaintiff offers several defenses to the grounds for her removal in this letter, including that Bray did not originally give her a specific amount of time to complete the debt letters assigned to her, and that in any event she was not trained adequately; that she hung up her cell phone "promptly" when instructed to do so by Bray; that she performed her assigned duties to the best of her abilities; and that in addition there were mitigating circumstances that prevented completion of the task assigned. See Court Docket No. 80, pp. 22-23. However, nothing in this letter constitutes evidence that her removal was in retaliation for engaging in union activities.

Another attachment to Plaintiff's Exhibit G is a letter to David Gates with DFAS dated February 28, 2006, in which Plaintiff asserts an affirmative defense to her removal; i.e., that Bray "interfered with the internal process of the Union and denied [Plaintiff] participation in Union activities and threatened [Plaintiff's] employment if she were to contact the Union President . . . . grievant denies all charges and contend[s] that the removal is a direct result of her participating in Union as well as other protected activities." See Court Docket No. 80, pp. 35-36. It is not clear if this letter is considered a part of the administrative record - but if it is, then it does reflect that, at least at some point, Plaintiff had complained to DFAS that her removal was due in part to her union activities, although there is no indication in the record that any such claim was considered by the MSPB. Cf. Lizut, 717 F.2d at 1396. Even so, such a bare allegation, without some supporting evidence, and in the absence of evidence showing that Plaintiff did not commit the infractions discussed in the administrative decision, does not establish arbitrariness or lack of substantial evidence for the



decision. Cf. Bank v. Merit Systems Protection Board, 966 F.2d 647, 649 (Fed. Cir. 1992)[Appeal must include an allegation "supported by factual assertions indicating that the allegation is not a pro-forma pleading. A merely conclusory pleading is insufficient."], citing Stokes v. Federal Aviation Administration, 761 F.2d 682, 686 (Fed. Cir. 1985). The remainder of the exhibits attached to William Roach's affidavit deal with the agency responses to Plaintiff's claims, or with issues or claims other than her remaining claim of retaliation.

In order to have successfully prosecuted a retaliation claim, Plaintiff had to establish a prima facie case that the Defendant discharged her in retaliation for her union activities. A prima facie case consists of 1) that the employee engaged in protected activities; 2) that the employer had knowledge of the employee's activities; and 3) that the employer acted with an anti-union animus. If a prima facie case is established, the question then becomes whether the employer was able to rebut that evidence or to show that the job action at issue would have been taken even in the absence of the employee's protected activities. Makky, 489 F.Supp. 2d, at 439; cf. RGC (USA) Mineral Sands, Inc. v. National Labor Relations Board, et al., 281 F.3d 442, 448 (4th Cir. 2002)[NLRB case]; Jet Star, Inc. v. National Labor Relations Board, 209 F.3d 671, 675 (7th Cir. 2000)[Same]; cf. Frisenda v. The Incorporated Village of Malverne, et al., No. 08-4198, 2011 WL 1227774, at * 16-19 (E.D.N.Y. Mar. 31, 2011)[First Amendment union participation case]. The record before the Court, considered in the light most favorable to the Plaintiff, is sufficient to show that Plaintiff engaged in protected activity through her actions as the union secretary and by asserting her union rights under the CBA, and that the Defendant had knowledge of these activities. However, Plaintiff has provided no evidence, other than her own general and conclusory claims and allegations, to show that a retaliatory motive was a substantial or motivating factor in the Defendant's actions. RGC (USA) Mineral Sands, Inc., 281 F.3d



at 448. Plaintiff's own self-interested statements as to what she believed or perceived are not sufficient evidence to maintain this claim. Cf. McNairn v. Sullivan, 929 F.2d 974 (4th Cir. 1991); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson, 887 F.3d at 481 [Plaintiff cannot succeed on appeal by relying on speculation].

Plaintiff has also failed to present any evidence to show, or even to provide any cogent argument in her brief to support, a finding by this Court that the decision reached by the MSPB is not supported by substantial evidence. In her briefs, Plaintiff argues that she does not believe she was treated fairly over a period of time dating back to 2004, but spends very little time addressing the actual reasons for her dismissal as set forth by the Defendant and as found by the MSPB. Further, as previously noted, Plaintiff has provided no evidence to dispute that she failed to complete the debt inventory as instructed, or committed the other infractions cited in the removal decision, other than to argue generally that she was denied "full due process" with respect to a defense of these claims. Plaintiff must do more than make a bare assertion that her dismissal was a result of retaliation for engaging in union activity in order to defeat the Defendant's motion for summary judgment - rather, "she must establish that, viewing the administrative record as a whole, the AJ's ruling was not supported by substantial evidence." Makky, 489 F.Supp. 2d, at 439. Plaintiff has not met this burden.

## IV.

As for Plaintiff's alleged procedural violations, assuming any such errors or violations occurred (a finding which the undersigned does not make), Plaintiff has produced no evidence to show that any putative errors were such as to justify reversal or reconsideration of her termination. Johnson, 887 F.2d at 481 [noting that to establish that any error committed was "harmful" error, Plaintiff must show an "[e]rror by the agency in the application of its procedures which, in the absence or cure of



15

the error, would have been likely to cause the agency to reach a conclusion different than the one reached."], citing 5 C.F.R. § 1201.56(c)(3). Plaintiff has not pointed to any action taken by the Defendant which, if the Defendant had acted differently, would have resulted in a different outcome of her case. Plaintiff argues that she was thwarted in seeking arbitration of her claims and that she was also not accorded her union contractual right to be placed on a performance improvement plan before being removed under CBA Article 35, that she was denied union representation in violation of her employee/Weingarten rights under CBA Article 3, and that the Union was denied an opportunity to investigate the charges pursuant to CBA Article 38. See Plaintiff's Memorandum in Opposition [Court Docket No. 78, at p. 5]; see also, Plaintiff's Exhibit F. However, Plaintiff was represented by counsel during her administrative proceedings, and the AJ specifically found in his decision that Plaintiff's misconduct charges were proper, that her request for union representation during her meeting with Bray was properly handled, that there was a sufficient nexus between Plaintiff's conduct and the efficiency of service as established by applicable caselaw, and that the penalty imposed was well within the bounds of reasonableness. Plaintiff's Exhibit C. No part of the record to bring any of these findings into question has been provided.

Plaintiff has not shown how any of her cited CBA or due process concerns, if handled differently, would have changed the outcome of her case. Makky, 489 F.Supp. 2d, at 437-438 [Granting Defendant's motion for summary judgment where Plaintiff failed to show that, but for the agency's alleged procedural violation, the decision would have been different]. This argument is therefore without merit. Makky, 489 F.Supp. 2d at 435 [Upholding decision of the administrative judge where court did not find that the administrative judge's application of the law or recitation of the facts was erroneous]; Cornelius v. Nutt, 472 U.S. 648, 663 (1985)[Congress did not intend to force



the Government to retain poor employees "solely in order to 'penalize the agency' for nonprejudical procedural mistakes it committed while attempting to carry out the congressional purpose of maintaining an effective and efficient Government"]; <u>Johnson</u>, 887 F.2d at 481 [Plaintiff has the burden of producing evidence that any procedural violations resulted in harmful error].

## **Conclusion**

Based on the foregoing, the undersigned finds and concludes that Plaintiff's claim that her termination was in retaliation for having engaged in protected union activity and in violation of the CBA is without merit, and as this is the only remaining claim in this lawsuit, this case should be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

June 22, 2010
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> P.O. Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

